FILED

2016 DEC 22  AM 9: 39

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) INFORMATION |
| | ) |
| Plaintiff, | ) 5:16 CR 394 |
| | ) |
| v. | ) CASE NO. JUDGE PEARSON |
| | ) Title 42, Section 7413, United |
| RUSSELL P. STEWART, | ) States Code |
| | ) |
| Defendant. | ) |

The United States Attorney charges that at all times material herein:

### DEFENDANT

1.      Defendant, RUSSELL P. STEWART, was the owner and operator of Chemstruction, a company which specialized in building demolition. Chemstruction was established by STEWART and, as such, STEWART was doing business as Chemstruction.

### ASBESTOS REGULATIONS

2.      The Clean Air Act ("CAA"), 42 U.S.C. § 7401, *et seq.*, is the United States' comprehensive air pollution control statute. The purpose of the CAA is "to protect and enhance the quality of the nation's air resources so as to promote the public health and welfare . . . ." 42 U.S.C. § 7401(b)(1).

3.      Asbestos is a heat-resistant mineral fiber that was used widely in insulation and fire retardant building products before 1971.

4.      In 1971, the United States Environmental Protection Agency ("EPA") declared that asbestos was a hazardous air pollutant under the CAA. 42 U.S.C. § 7412.

5.      The EPA has promulgated regulations concerning the demolition of buildings which contain asbestos. *See* 40 C.F.R. §§ 61.145, *et seq.* (hereinafter, "the asbestos regulations"). Demolition is defined as the removal of load-supporting beams. *See* 40 C.F.R. § 61.140. The asbestos regulations apply to demolition activities in which more than 260 linear feet, 160 square feet, or 35 cubic feet of regulated asbestos-containing material ("RACM") is in the building to be demolished. *See* 40 C.F.R. § 61.145(a)(1).

6.      RACM includes "non-friable" asbestos that contains more than one-percent asbestos and which is material that has a high probability of becoming or has become crumbled, pulverized, or reduced to powder by the forces expected to act on it during the course of the demolition ("Category II non-friable asbestos"). *See* 40 C.F.R. § 61.141.

7.      Owners or operators of a regulated demolition activity include persons or who own, operate, control, or supervised the demolition operation. 40 C.F.R. § 61.141.

8.      Owners and operators of a regulated demolition activity must comply with several regulatory requirements, including, but not limited to:

      a.      All regulated asbestos-containing material must be carefully lowered to the ground and floor, and not dropped, thrown, slid, or otherwise damaged or disturbed. 40 C.F.R. § 61.145(c)(6)(ii).

      b.      All regulated asbestos-containing waste material must be deposited as soon as practical at an asbestos waste disposal or processing site operated in accordance with the asbestos regulations. 40 C.F.R. § 61.150(b). "Asbestos-containing waste materials" include RACM waste materials and any materials contaminated with asbestos.

"Waste generator" is defined to include an owner or operator of a source whose act produced asbestos-containing waste material. *See* 40 C.F.R. § 61.141.

9.    The Canton City Health District ("CCHD") is the local air pollution control agency that serves Stark County.

10.    The EPA delegated to the State of Ohio, and the State of Ohio delegated to CCHD, the authority to enforce the asbestos regulation program in Stark County, Ohio.

<u>DEMOLITION OF STARK CERAMICS FACILITY</u>

11.    On or about November 1, 2011, STEWART entered into a contract with the property owner to demolish the former Stark Ceramics facility ("the Site"), located at 600 West Church Street, Canton, Ohio, in Stark County, Ohio. The Site covered approximately 500 acres and consisted of numerous commercial buildings, including two kiln buildings, commonly referred to as Buildings 10 and 11, and a glaze oven building, commonly referred to as Building 14. The contract provided that all asbestos-containing materials would "be removed and abated under the contract," and that the demolition would "be completed . . . in accordance with environmental regulations and industry standards." The contract further provided that the demolition would "be performed in several stages" and that no building would be demolished until "all of the environmental issues [had been] performed." In exchange for performing the demolition and cleanup, STEWART was entitled to the salvage rights for the Site, including the value of any scrap material removed from the Site.

12.    In or around October 2011, an environmental company ("Survey Subcontractor"), on behalf of STEWART, inspected the Site to determine the amount of asbestos, if any, was on the Site. On or about October 24, 2011, the Survey Subcontractor issued a survey report ("Survey") to STEWART with its findings. The Survey showed that asbestos was present

throughout the Site. More specifically, the Survey stated that approximately 130,845 square feet of transite wall and roof panels on Buildings 10 and 11 were found to contain asbestos. The Survey included descriptions and photographs of the transite panels as well as sample results which showed that the transite panels contained between approximately 25% and 35% chrysotile asbestos.

13.     On or about November 30, 2011, STEWART retained the services of a subcontractor ("Abatement Subcontractor") to abate the friable asbestos material at the Site. Although the Abatement Subcontractor also submitted a bid for the disposal and removal of the transite panels (non-friable asbestos material), STEWART only retained the Abatement Subcontractor to abate the friable asbestos material. The quoted cost for removing the friable asbestos material was approximately $43,000.00. The quoted cost for removing the non-friable asbestos material was approximately $231,200.00.

14.     Beginning on or about November 1, 2011, through on or about January 3, 2013, STEWART participated in, directed, and oversaw the demolition of building and structures at the Site and the removal of scrap metal.

15.     On or about October 15, 2012, a CCHD Air Pollution Control Monitoring and Inspection Technician ("Technician") inspected the Site. The Technician observed damaged, dislodged, and crushed transite panels at the Site. The Technician further observed that Building 14 was mostly demolished. STEWART was present at the Site during the inspection.

16.     On or about October 17, 2012, the Technician went to the site and took samples of crushed transite panels. The transite samples were determined to contain approximately 15% chrysotile asbestos.

4

17.     On or about October 19, 2012, the Technician told STEWART to stop the demolition of Building 14 due to asbestos contamination.

18.     On or about November 21, 2012, the Technician met with STEWART and representatives of a subcontractor at the Site. The purpose of the meeting was to generate a plan to clean up the area of the Site contaminated by asbestos.

19.     Between on or about November 21, 2012, and January 3, 2013, before any clean up was conducted, STEWART demolished Site buildings, including Buildings 10, 11, and 14, causing the asbestos transite panels to be dropped, crumbled, pulverized, and reduced to powder by machinery during the course of the demolition and scrap-metal removal.

20.     On or about January 3, 2013, the Technician observed STEWART demolishing Building 11 with an excavator. STEWART was swinging the mechanized arm of the excavator across the building, causing the asbestos transite panels to drop to the ground and become crumbled, pulverized, and reduced to powder.

21.     On or about February 25, 2013, the Technician took samples of crushed transite panels. The transite samples were determined to contain approximately 15% chrysotile asbestos.

22.     Category II non-friable asbestos was present in the wall and roof transite panels at the Site. The transite wall and roof panels at the Site contained at least 260 linear feet, 160 square feet, or 35 cubic feet of RACM.

23.     STEWART did not properly deposit the asbestos-containing waste material at a licensed asbestos waste disposal facility. Debris from the crushed asbestos transite panels littered the Site. This debris remained in such condition for weeks and was exposed to wind and the elements.

## COUNT 1
### (42 U.S.C. § 7413(c): Improper Asbestos Demolition)

24.    The factual allegations of Paragraphs 1 through 23 above are incorporated herein.

25.    From on or about October 15, 2012, through on or about January 3, 2013, in the Northern District of Ohio, Eastern Division, Defendant, RUSSELL P. STEWART, was the owner and operator of a demolition activity involving a facility that contained more than 260 linear feet and more than 160 square feet of RACM, and RUSSELL P. STEWART knowingly failed to carefully lower all RACM at the Site to the ground and floor, without dropping, throwing, sliding, or otherwise damaging or disturbing the material, in violation of 40 C.F.R. § 61.145(c)(6)(2), to wit: RUSSELL P. STEWART used heavy machinery to tear down Site Buildings 10, 11, and 14, thereby causing roof and wall transite panels to become crumbled, pulverized, and reduced to powder, all in violation of 42 U.S.C. § 7413(c)(1).

## COUNT 2
### (42 U.S.C. § 7413(c): Failure to Timely Dispose of Asbestos Waste)

26.    The factual allegations of Paragraphs 1 through 23 above are incorporated herein.

27.    From on or about October 15, 2012, through on or about January 3, 2013, in the Northern District of Ohio, Eastern Division, Defendant, RUSSELL P. STEWART, was the owner and operator of a demolition activity involving a facility that contained more than 260 linear feet and more than 160 square feet of RACM, and RUSSELL P. STEWART knowingly failed to comply with the asbestos waste disposal standards under 40 C.F.R. § 61.150, to wit: RUSSELL P. STEWART did not, as soon as practical, properly deposit the asbestos-containing

5:16 CR 394

waste materials generated during the Site demolition activities at a licensed asbestos waste

disposal facility, all in violation of 42 U.S.C. § 7413(c)(1).

CAROLE S. RENDON
United States Attorney

By: _____

EDWARD F. FERAN
Chief, Major & Organized Crime